Filed 5/21/15  Dixon v. Nationstar Mortgage CA6
Received for posting 7/6/15

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| OSRIC DIXON, et al., | H040934 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 113-CV-252747) |
| v. | |
| NATIONSTAR MORTGAGE, LLC, | |
| Defendant and Respondent. | |

Plaintiffs Osric and Emmanuela Dixon appeal from a judgment dismissing their action to quiet title to their home in Morgan Hill.  Plaintiffs contend that the superior court erred by taking judicial notice of exhibits documenting plaintiffs' debt on the property and on that basis sustained the demurrer of defendant Nationstar Mortgage, LLC (Nationstar), the assignee of the first deed of trust.  We find no error and therefore must affirm the judgment.

*Background*

Because this appeal arises from the sustaining of a demurrer, our summary of the factual history is drawn primarily from the operative pleading, plaintiffs' first amended complaint.  Toward this end "we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may properly be judicially noticed." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

Plaintiffs initiated this action on August 13, 2013. In their first amended complaint, filed September 10, 2013, they asserted a single cause of action for quiet title, naming Homecomings Financial, LLC[1] (Homecomings) and Nationstar. Homecomings subsequently filed for bankruptcy and disclaimed any interest in the property, and according to the parties, was dismissed from the lawsuit in November 2013.[2]

The first amended complaint contained the claim, "[u]pon information and belief," that plaintiffs held "free and clear title" to the property at issue, and they sought an order "to establish that fact." Nationstar responded two months later with their demurrer, asserting two challenges to the sufficiency of plaintiffs' pleading. First, Nationstar pointed out that plaintiffs had failed to identify the defendants' adverse claims, as required for a quiet title action under Code of Civil Procedure section 761.020, subdivision (c).[3] It further asserted as a dispositive fact that plaintiffs had failed to tender the amount they owed under the two deeds of trust that encumbered the property.

Accompanying the demurrer was Nationwide's request for judicial notice of seven attached documents representing the history of plaintiffs' loan. The superior court took judicial notice of those that had been recorded, exhibit Nos. 2 through 7, "as these documents are recorded instruments that cannot reasonably be controverted." Thus, the court had before it two deeds of trust listing plaintiffs as borrowers and Homecomings Financial Network, Inc. (later known as Homecomings Financial, LLC or, here, Homecomings) as lender; a notice of default recorded by Quality Loan Service

---

[1] Plaintiffs sued this entity as Homecoming Financial, LLC., but its correct name is Homecomings Financial, LLC.

[2] The parties provide no proper citation to the record for this asserted fact. It is, however, irrelevant to the issues that remain between plaintiffs and Nationstar.

[3] Plaintiffs' complaint alleged only that Nationstar had "insinuated without provision of corroborative evidence that it has some interest in the Property that is adverse to the Plaintiffs."

2

Corporation (Quality); a substitution of trustee naming Quality as trustee; a notice of trustee sale recorded by Quality; and an assignment of the deed of trust from Homecomings's nominee, Mortgage Electronic Registration Systems, Inc. (MERS) to Nationstar. Because those documents indicated that plaintiffs were in default and they had not alleged that they had tendered payment of the debt, the court sustained the demurrer without leave to amend. Following plaintiffs' ultimately unsuccessful motion for reconsideration,[4] the court entered judgment for plaintiffs. This timely appeal followed.

*Discussion*

On appeal, plaintiffs assert error on the ground that Nationstar had "admitted," by the act of filing the demurrer, that it had no "legitimate interest" in plaintiffs' home. In their view, "[t]here is no California law that requires tender to a person not proven owed a debt secured by the subject real estate." Because no admissible evidence existed that they owed any debt to Nationstar, plaintiffs contend that the demurrer was improperly sustained.

Nationstar initially responds with an argument that is the source of considerable discussion and general agreement among the other appellate courts of this state. Citing *Gomes v. Countrywide Home Loans*, *Inc*. (2011) 192 Cal.App.4th 1149 and *Jenkins v. JP Morgan Chase Bank*, *N.A*. (2013) 216 Cal.App.4th 497, Nationstar contends that borrowers are not permitted to sue preemptively to avert or delay a nonjudicial foreclosure. (See also *Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 745 [agreeing with *Jenkins* that suits to preempt foreclosure should not be permitted];

---

[4] The court entered its judgment of dismissal on February 19, 2014, while the motion for reconsideration was pending. With that entry of judgment it lost jurisdiction to rule on the pending motion, though it did subsequently deny the motion. (See, e.g., *Safeco Ins. Co. v. Architectural Facades Unlimited*, *Inc*. (2005) 134 Cal.App.4th 1477, 1482 ["It is well settled that entry of judgment divests the trial court of authority to rule on a motion for reconsideration"].)

*Robinson v. Countrywide Home Loans*, *Inc*. (2011) 199 Cal.App.4th 42, 46 [same]; *Siliga v. Mortgage Electronic Registration Systems*, *Inc*. (2013) 219 Cal.App.4th 75, 84 [rejecting preemptive suit to require the foreclosing party to demonstrate its authority to initiate foreclosure].)  We need not enter this arena, however.  Assuming plaintiffs' quiet title action is properly before us, we nonetheless conclude that it was properly subjected to demurrer.

Plaintiffs correctly cite the standards governing this court's review.  "A demurrer is properly sustained when the complaint 'does not state facts sufficient to constitute a cause of action,' or where the court 'has no jurisdiction of the subject of the cause of action alleged in the pleading.'  (Code Civ. Proc., § 430.10, subds. (e), (a).)"  (*Debrunner v. Deutsche Bank National Trust Co*. (2012) 204 Cal.App.4th 433, 438.)  " 'On appeal from a dismissal following the sustaining of a demurrer, this court reviews the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. . . .  [¶]  Because the function of a demurrer is not to test the truth or accuracy of the facts alleged in the complaint, we assume the truth of all properly pleaded factual allegations.  [Citation.]  Whether the plaintiff will be able to prove these allegations is not relevant; our focus is on the legal sufficiency of the complaint.' "  (*Ibid*., quoting *Los Altos Golf and Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 203.)  "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

We do not, however, assume the truth of "mere contentions or assertions contradicted by judicially noticeable facts."  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; see also *Blatty v. New York Times Co*. (1986) 42 Cal.3d 1033, 1040 ["when the allegations of the complaint contradict or are inconsistent with such facts, we accept the latter and reject the former"].)  Nor do we assume the truth of "contentions, deductions or conclusions of law."  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)  Finally, when the demurrer is sustained without leave to amend, "we decide whether

4

there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse." (*Ibid.*; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Sandhu v. Lockheed Missiles & Space Co.* (1994) 26 Cal.App.4th 846, 850.)

Critical to our review in this case is the qualification noted above, that although we assume the truth of properly pleaded factual allegations, we do not assume the truth of factual assertions contradicted by judicially noticeable facts.  The premise of plaintiffs' position on appeal is that the superior court improperly took judicial notice of documents on which it then based its order sustaining Nationstar's demurrer.  Without those documents, plaintiffs argue, we must assume the truth of plaintiffs' allegation that Nationstar holds no "interest in the Property that is adverse to the Plaintiffs."  Plaintiffs thus seek reversal in order to give them "the opportunity to have that matter determined in a trial involving full evidentiary processes."

Plaintiffs' position calls for a more thorough scrutiny of the principles governing judicial notice, which are aptly explained in *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264-265 (*Fontenot*):  "Evidence Code section 452, subdivisions (c) and (h), respectively, permit a court, in its discretion to take judicial notice of '[o]fficial acts . . . of any state of the United States' and '[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy.'  [¶]  Pursuant to these provisions, courts have taken judicial notice of the existence and recordation of real property records, including deeds of trust, when the authenticity of the documents is not challenged. [Citations.]  The official act of recordation and the common use of a notary public in the execution of such documents assure their reliability, and the maintenance of the documents in the recorder's office makes their existence and text capable of ready confirmation, thereby placing such documents beyond reasonable dispute.  [¶]  In addition, courts have taken judicial notice not only of the existence and recordation of

5

recorded documents but also of a variety of matters that can be deduced from the documents.  In *Poseidon* [*Development*, *Inc*. *v*. *Woodland Lane Estates*, *LLC* (2007) 152 Cal.App.4th 1106], for example, the court affirmed the trial court's taking judicial notice, in sustaining a demurrer, of the parties, dates, and legal consequences of a series of recorded documents relating to a real estate transaction.  (*Poseidon*, *supra*, 152 Cal.App.4th at pp. 1117-1118.)  Although the court recognized that it would have been improper to take judicial notice of the truth of statements of fact recited within the documents, the trial court was permitted to take judicial notice of the legal effect of the documents' language when that effect was clear.  (*Ibid*.)  Similarly, in *McElroy v*. *Chase Manhattan Mortgage Corp*. (2005) 134 Cal.App.4th 388, the court took judicial notice of the recordation of a notice of default under a deed of trust, the date of the notice's recording, and the amount stated as owing in the notice for the purpose of demonstrating the plaintiffs had notice of the amount claimed to be owing and the opportunity to cure a defective tender.  (*Id*. at p. 394.)"  (*Fontenot*, *supra*, at pp. 264-265.)

From this analysis the *Fontenot* court concluded, "a court may take judicial notice of the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity.  From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face."  (*Fontenot*, *supra*, 198 Cal.App.4th at p. 265.)

In this case, the judicially noticed documents, exhibit Nos. 2 through 7, all pertain to the original deeds of trust recorded in April 2006, listing Homecomings as lender, Fidelity National Title as trustee, and MERS as nominee and beneficiary.  The notice of default was recorded February 18, 2010 by Quality, the current loan servicer; and the substitution of trustee naming Quality as successor trustee was signed by MERS as beneficiary and recorded April 1, 2010.  The notice of trustee sale was recorded by

6

Quality on May 21, 2010. Finally, there is exhibit No. 7, which is the apparent source of plaintiffs' protest. This "Corporate Assignment of Deed of Trust," recorded June 4, 2013, conveyed "all rights, title and interest" secured by the first deed of trust, including "all liens, and any rights due or to become due thereon" from MERS to Nationstar.

Plaintiffs emphatically protest that courts may not take judicial notice of the truth of the facts stated in a judicially noticed document. This is an accurate statement, but in this case it is the *legal effect* of the exhibits that plaintiffs seek to suppress. Exhibit No. 4 establishes that a notice of default was recorded on plaintiffs' residential loan in February 2010, and exhibit No. 6 shows a notice of trustee's sale recorded in May 2010. To the extent that plaintiffs maintain that there is no admissible evidence that any debt is owed to Nationstar, exhibit No. 7 reflects the recorded assignment of the deed of trust in June 2013.

Under the guidance provided by Evidence Code section 452 and elaborated on in *Fontenot*, the trial court acted within its discretion in taking judicial notice of the existence and legal effect of these documents. "Under the doctrine of truthful pleading, the courts 'will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts that are judicially noticed.' " (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.) Accordingly, for purposes of our demurrer analysis, we do not accept as true the allegation that plaintiffs "hold free and clear title to the Property," as that allegation is contradicted by the documents of which the court properly took judicial notice. We thus conclude that the premise of plaintiffs' entire position on appeal—that no evidence exists that Nationstar holds any rights as assignee of the deed of trust—cannot support plaintiffs' request for quiet title.

In order to establish a claim for quiet title, a borrower must first pay the outstanding debt on which the mortgage or deed of trust is based. (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86; see also *Shimpones v. Stickney*

7

(1934) 219 Cal. 637, 649 ["a mortgagor cannot quiet his title against the mortgagee without paying the debt secured"].) "The cloud upon his title persists until the debt is paid." (*Aguilar v. Bocci* (1974) 39 Cal.App.3d 475, 477.)

Inasmuch as plaintiffs rely on equity in seeking quiet title (see *Estate of Phelps* (1990) 223 Cal.App.3d 332, 340 [quiet title action is equitable in nature]), they fail to convince this court that it is equitable for them to obtain quiet title to the property without fulfilling their payment obligation. "The plaintiff in a quiet title suit is not helped by the weakness of his adversary's title but must stand upon the strength of his or her own." (*Shimpones v. Stickney*, *supra*, 219 Cal. at p. 649.) Accordingly, until plaintiffs remove the cloud on their title by repaying the debt, they are not entitled to a judgment decreeing them to be the owners of the property "free and clear." (*Burns v. Hiatt* (1906) 149 Cal. 617, 622.) Because plaintiffs failed to allege that they tendered funds to discharge their debt, they are not entitled to maintain an action for quiet title.

Plaintiffs have not suggested that by further amendment they could cure the defects in their pleading; indeed, there is no indication that they even wish to undertake such amendment. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; see also *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44 [neither trial court nor appellate court will rewrite a complaint for the plaintiff].) Because their pleading fails as a matter of law to state a legally sufficient cause of action for quiet title and no amendment is proposed, we must uphold the ruling sustaining Nationstar's demurrer without leave to amend.

*Disposition*

The judgment is affirmed.

8

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.